**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOE HAND PROMOTIONS, INC.,**

        **Plaintiff,**

   **v.**                                     **1:13-CV-300 (NAM/CFH)**

**DUKE BAZZEL TOBACCO & LOUNGE LLC
d/b/a DUKE BAZZEL TOB & LOUNGE, LLC
d/b/a DUKE BAZZEL TOBACCO & LOUNGE,
d/b/a DUKE BAZZEL, BRIAN R. VROOMAN
and a/k/a BRIAN R. URDOMAN,**

        **Defendants.**
_____

**APPEARANCES:**

Craig H. Norman, Esq.
Wilhelm & Norman, PLLC
122 Remsen Street
Cohoes, NY 12047
For Plaintiff

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

**I    INTRODUCTION**

Plaintiff Joe Hand Promotions, Inc., moves for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Dkt. No. 8. Plaintiff seeks statutory money damages pursuant to the Federal Communications Act of 1934, 47 U.S.C. §§ 553 and 605, for defendants' illegal interception of the *Ultimate Fighting Championship 128: Maurici Rua v. Jon Jones*, telecast March 19, 2011(the "Program"). According to the complaint, plaintiff held the "exclusive nationwide commercial distribution (closed-circuit) rights" to this Program and defendants illegally intercepted it and displayed it to five patrons at Duke Bazzel Tobacco & Lounge. Dkt. No. 1.

## II. DISCUSSION

### A. Standard

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Greyhound Exhibitgroup. Inc. v. E.L. U.L. Reality Corp.*, 973 F .2d 155, 158 (2d Cir. 1993); *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. *See Au Bon Pain*, 653 F.2d at 69–70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

A court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed.R.Civ.P. 55(b) (2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc*., 951 F.2d 504, 508 (2d Cir. 1992 ) (quoting *Fustok v. Conticommodity Servs., Inc*., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. *See Au Bon Pain*, 653 F.2d at 65 (citing *Trans World Airlines, Inc. v. Hughes*, 308 F.Supp. 679, 683 (2d Cir.1969)).

### B. Liability

Defendants have failed to answer plaintiff's complaint and plaintiff has obtained a Clerk's Entry of Default (Dkt. No.7). Thus, the Court deems true all relevant and well-pleaded factual allegations in plaintiff's complaint. *See H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). The complaint sets forth well-pleaded facts supporting plaintiff's claim that defendants

knowingly, willfully and unlawfully intercepted, received and displayed the Program at the time of its transmission at their commercial establishment. Defendants' default constitutes an admission of these factual allegations. *See Au Bon Pain Corp.*, 653 F.2d at 65. Accordingly, plaintiff has demonstrated that it is entitled to the relief requested, that is, judgment against defendants, for any and all such damages recovered by the plaintiff herein, together with all costs and disbursements and attorney's fees in connection with this action.

### C. Damages

After establishing liability, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997). To determine the amount of damages in the context of a default judgment, "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). "It [is] not necessary for the District Court to hold a hearing, as long as it ensured that there [is] a basis for the damages specified in the default judgment." *Fustok*, 873 F.2d at 40.

Plaintiff seeks an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in the amount of $100,000, an award of statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii) in the amount of $10,000 and additional damages pursuant to 47 U.S.C. § 553(c)(3)(B) in the amount of $50,000, and an unspecified amount of damages for conversion. In exercising discretion in awarding damages, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. *See Cablevision Sys. New York City Corp. v. Faschitti*, No. 94 Civ. 6830(DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996). A court should therefore grant damages in an amount which achieves the deterrent purposes of the statute. *See Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 113 (E.D.N.Y.1997).

3

Section 553 prohibits persons from intercepting or receiving "any communications service offered over a cable system, unless specifically authorized to do so ...." 47 U.S.C. § 553(a)(1). Section 605 proscribes the unauthorized interception and publication of any "radio communication." *See id*. § 605(a). Defendants' default is deemed an admission of the use of an unauthorized device to intercept coded and scrambled internet transmissions. *Greyhound*, 973 F.2d at 158; *Au Bon Pain Corp*., 653 F.2d at 65; *see also Transatlantic Marine Claims Agency, Inc*., 109 F.3d at 108 (recognizing that the factual allegations in the complaint, except those relating to damages, are deemed true after default). Defendants have therefore admitted to violating both sections 553 and 605.

Where a defendant admits to violating both sections, a plaintiff may elect to recover damages under section 605. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 n. 5 (2d Cir. 1996). Further, "[p]laintiffs who seek compensation for damages and lost profits under § 605 may elect to seek either actual damages and lost profits or basic statutory damages." *Joe Hand Promotions v. Elmore*, No. 11-cv-3761, 2013 WL 2352855, at *6 (E.D.N.Y. May 29, 2013); 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff has opted for statutory damages. The range of statutory damages for a violation of section 605(a) is $1,000 to $10,000. "The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J & J Sports Prods., Inc. v. Hot Shots, Inc*., No. 09–CV–1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (citing 47 U.S.C. § 605(e)(3)(C)(i)(II)), adopted by 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010).

There are two methods for assessing damages:

> Although § 605 provides little guidance as to how to set damages within the statutory range for each violation, courts in the Second Circuit have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events by commercial establishments. The first method assesses the award of damages based upon the number of patrons in the

4

establishment who viewed the unauthorized broadcast. The second method awards a flat sum for each violation.

*Elmore*, 2013 WL 2352855 at 6 (internal alterations, quotation marks and citations omitted).

Where there is undisputed evidence of the number of patrons viewing the match in an establishment, courts have used the first approach as a starting point and multiplied the number of patrons by a set sum: $54.95 per patron, the price to view the event at home on a pay-per-view channel. *See Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc*., No. 07–CV–3849, 2012 WL 4328355, at *4 (E.D.N.Y. June 21, 2012) (using $54.95 as a standard price where defendants broadcasted boxing match without obtaining a sublicense from the owners), adopted by 2012 WL 4328347 (E.D.N.Y. Sept.19, 2012); *Hot Shots, Inc*., 2010 WL 3522809, at *2 ("[C]ourts have often multiplied the number of patrons by $54.95, the price an individual would pay to view the event at home on a pay-per-view channel."); *Kingvision Pay–Per–View Ltd. v. Cazares*, No. 05–CV–2934, 2006 WL 2086031, at *3–4 (E.D.N.Y. July 25, 2006) ($54.95 per patron); *J & J Sports Prods., Inc. v. Arhin*, No. 07–CV–2875, 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) (same). When the sum of per-patron damages is less than the fee that the establishment would have paid for a sub-license to broadcast the program, courts have used the sub-license fee to formulate a damages award. *See J & J Sports Prods., Inc. v. Meson de Colombia, Inc*., No. 10–CV–1142, 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010), adopted by 2010 WL 4789964 (E.D.N.Y. Nov.18, 2010) (awarding $1,500 in statutory damages based on the sub-license fee because the per-patron sum of $1,000 was "slightly less" than the sub-license fee).

Here, the evidence indicates that five individuals were in the establishment at the time of the Program. The total per-patron fee is therefore $274.75 ($54.95 x 5). According to plaintiff,

based on a maximum occupancy of fifteen, the sub-license fee for the establishment would have been $900. Both amounts are less than basic statutory damages: $1,000. The Court therefore finds that an award of $1,000 reasonably reflects the injuries plaintiff suffered and achieves the deterrent purposes of the Federal Communications Act.

**D.  Enhanced Damages**

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides in relevant part:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, ... by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization. *See Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. *Kingvision Pay–Per–View Ltd. v. El Rey Del Bistec y Caridad, Inc.*, No. 01–CV–6562, 2001 WL 1586667, at *3 (S.D.N.Y. Dec.12, 2001).

In this case, while there is no evidence of repeated violations or substantial monetary gains, the evidence shows that defendants never paid the required fees to receive or display the

6

Program, charged its patrons an admission fee and displayed the Program illegally. Thus, the Court concludes defendants' actions were willful. The most readily identifiable loss plaintiff sustained was the sub-license fee it would have received had defendants legitimately obtained rights to display the Program: $900. Therefore, plaintiff is entitled to an enhancement of the basic statutory damages.

In circumstances demonstrating such willful and purposeful violation, "'it is appropriate to assess enhanced damages in conjunction with statutory damages.'" *135 Hunt Station Billiard, Inc.*, 2012 WL 4328355, at *5 (quoting *J & J Sports Prods., Inc. v. Welch*, No. 10–CV–159 (KAM), 2010 WL 4683744, at *5 (E.D.N.Y. Nov.10, 2010)). Courts in the Second Circuit typically fix the amount of enhanced damages as a multiple of two or three times the basic statutory damages award. *Id.; see also, J & J Sports Prods., Inc. v. Zevallos*, No. 10–CV–4049, 2011 WL 1810140, at *4 (E.D.N.Y. Apr.22, 2011) (recommending an enhanced damages award of two times the basic statutory damages), adopted by 2011 WL 1807243 (E.D.N.Y. May 11, 2011); *Joe Hand Promotions, Inc. v. La Nortena Rest. Inc.*, No. 10–CV–4965, 2011 WL 1594827, at *5 (E.D.N.Y. Mar.28, 2011) (same), adopted by 2011 WL 1598945 (E.D.N.Y. Apr.27, 2011). "When determining a proper amount of enhanced statutory damages, 'courts have borne in mind that although the amount of damages should be an adequate deterrent, a single violation is not so serious as to warrant putting the restaurant out of business.'" *Joe Hand Productions, Inc. v. Zafaranloo*, NO. 12-CV-3828, 2014 WL 1330842, at *4 (E.D.N.Y. Apr. 1, 2014) (quoting *Kingvision Pay Per-View Ltd. v. Autar*, 426 F. Supp.2d 59, 64 (E.D.N.Y. 2006) (internal quotation marks and alteration omitted)). Accordingly, the Court awards plaintiff $1,000 in basic statutory damages and $2,000 in enhanced statutory damages, for a total award of $3,000.

To the extent plaintiff seeks an award of damages for conversion, such damages are not

7

warranted because "they appear to be duplicative of the damages already awarded" for defendants' violation of the Federal Communications Act. *Joe Hand Promotions, Inv. v. Soviero*, NO. 11-CV-1215, 2012 WL 3779224, at *9 (E.D.N.Y. Jul. 31, 2012). Accordingly, the Court declines to award such damages.

Although plaintiff requests an award of attorney's fees and costs, there is no evidence before the Court on which to base such an award. Accordingly, attorney's fees and costs are denied.

### III. CONCLUSION

It is therefore

**ORDERED** that plaintiff's motion for default judgment (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that plaintiff is awarded the sum of $3,000, representing $1,000.00 in statutory damages, plus $2,000.00 in enhanced damages; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for plaintiff and close this case.

**IT IS SO ORDERED.**

Date: June 16, 2014

Norman A. Mordue
Senior U.S. District Judge